UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KATHY BROWNE,        ) | |
|     Plaintiff,        ) | |
|             ) | |
| v.        ) | CAUSE NO.: 2:20-CV-196-JVB-APR |
|             ) | |
| JENNIFER WALDO, *et al.*,        ) | |
|     Defendants,        ) | |
| _____) | |
|             ) | |
| JENNIFER WALDO,        ) | |
|     Counter-Claimant,        ) | |
|             ) | |
| v.        ) | |
|             ) | |
| KATHY BROWNE,        ) | |
|     Counter-Defendant.        ) | |

## **OPINION AND ORDER**

This matter is before the Court on motions to dismiss filed by Defendants Stephen Kobitz[1] and the City of Valparaiso on July 16, 2020 [DE 26], Jennifer Waldo on July 16, 2020 [DE 28], and Anna Hearn on July 20, 2020 [DE 32]. Plaintiff Kathy Browne filed responses on September 2, 2020, and all four defendants replied on October 2, 2020. For the reasons described below, the motions are granted in part.

### **BACKGROUND**

On July 2, 2020, Plaintiff filed a seventeen-count Amended Complaint against the four defendants. In brief, the allegations[2] are as follows: Plaintiff Kathy Browne, a bi-racial woman

---

[1] Stephen Kobitz died after the initial complaint was filed. He has been substituted as a party by Todd Kobitz, personal representative of the estate of Stephen Kobitz.

[2] In addition to the facts pled in Browne's Amended Complaint, the Court takes judicial notice of the public dockets of two cases from Porter Superior Court involving Browne: a criminal case (Porter Superior Court Cause No. 64D04-1909-CM-009202), and a related protective order case (Porter Superior Court Cause No. 64D05-1909-PO-008894). *See* Fed. R. Evid. 201.

who lives in Virginia, is an author who sells books online. In 2017, Defendant Jennifer Waldo contacted Browne on social media and began harassing her and posting "derogatory, misleading, and false" comments online to interfere with Browne's book sales. This was part of a long-running dispute between Browne and Waldo, during which each acquired "intimate photos" of the other through Browne's former fiancé.[3] Eventually, Waldo asked Browne to send her the intimate photos to "confirm" them. After receiving the pictures of herself, Waldo indicated that she was trying to trap Browne into breaking the law: "[C]ongrats this is a felony . . . I'm so glad you did this."

Waldo sought a protective order and criminal charges against Browne. On September 25, 2019, Stephen Kobitz, a sergeant in the Valparaiso Police Department, contacted Browne and told her that Waldo was accusing her of distributing intimate photos of Waldo. In addition to the photos sent between the two, Waldo alleged that Browne posted photos of Waldo on Bumble, an online dating service. Browne told Kobitz about the "entrapment" incident, and that Waldo had been harassing her, and sent supporting documentation to Kobitz. Browne alleges that Waldo has a "close relationship" with the Valparaiso police, and that the police intentionally failed to investigate Browne's assertions, based in part on Browne's race and gender. Browne further alleges that Waldo, Kobitz and Defendant Anna Hearn (Waldo's attorney in the protective order case) embarked on a wide-ranging campaign of false statements and harassing actions against Browne to further their personal agendas against her.[4] Ultimately, Valparaiso police obtained a

---

[3] The complaint is unclear as to the relationships among Browne, Waldo, and the fiancé. In the interest of clarity, the Court notes that the state court filing lists Browne as the "ex-fiancé[e]" of Waldo's "friend," [DE 33-2] at 8, but does not assume this fact for purposes of the motion.

[4] Among many other allegations, Browne states that (1) Waldo told others that Browne would "perform certain acts on strangers"; (2) Hearn told another attorney that Browne was stalking Hearn and her children; (3) during the protective order proceedings, Hearn "improperly displayed" intimate images of Browne to "individuals in the courtroom"; and (4) Kobitz falsely told Browne that no warrant was pending for her arrest.

warrant for Browne's arrest, Browne was charged in state court with distribution of an intimate image, and a protective order issued on October 14, 2019, barring Browne from contacting Waldo.

The criminal charges were dismissed without prejudice on January 14, 2020, and the protective order was dismissed by agreement on January 15, 2020, with the parties agreeing not to contact each other. However, the dispute continues. Although the timeline of events in the complaint is unclear, the Court infers that after the legal proceedings ended, Waldo allegedly harassed Browne by contacting her friends, attempting to "ruin Browne's reputation," and threatening to distribute intimate videos of Browne. Browne filed her initial complaint in this case on May 13, 2020, seeking damages and injunctive relief. On May 15, 2020, Hearn and Waldo "traveled together" to Virginia to file for another protective order, "based on the same allegations" made in the Indiana court. On the same day, criminal charges were filed against Waldo in Virginia "in connection to issues related to Browne."

Browne now sues Waldo, Kobitz, Hearn, and the City of Valparaiso, under the following seventeen counts:

- Count I, alleging pursuant to 42 U.S.C. § 1983 that Valparaiso and Kobitz facilitated the false arrest and unfair prosecution of Browne in violation of her due process rights;
- Count II, alleging a civil rights conspiracy under 42 U.S.C. § 1985 against all defendants;
- Count III, alleging pursuant to 42 U.S.C. § 1983 that Kobitz knowingly submitted a false probable cause affidavit against Browne, facilitated by Valparaiso;
- Count IV, alleging false arrest against Valparaiso;
- Count V, alleging malicious prosecution by Hearn, Waldo, and Valparaiso;

- Count VI, alleging defamation against Waldo;

- Count VII, alleging defamation *per se* against Waldo;

- Count VIII, alleging slander against Hearn and Waldo;

- Count IX, alleging slander *per se* against Hearn and Waldo;

- Count X, alleging intentional infliction of emotional distress against Hearn, Waldo, and Valparaiso;

- Count XI[5], alleging negligent infliction of emotional distress against Hearn and Waldo;

- Count XII, alleging a claim of false light against Hearn, Waldo, and Valparaiso;

- Count XIII, alleging a claim of disclosure of nonconsensual pornography against Hearn and Waldo, pursuant to I.C. § 34-21.5-3-1;

- Count XIV, alleging a "class of one" claim pursuant to 42 U.S.C. § 1983 against Valparaiso and Kobitz;

- Count XV, alleging an abuse of process claim against Waldo;

- Count XVI, alleging a claim against Waldo under Indiana's Crime Victims Relief Act;

- Count XVII, alleging tortious interference with a business relationship against Waldo.

Hearn and Waldo seek to dismiss the state law counts pled against them pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. In addition, all defendants seek to dismiss various counts under Federal Rule 12(b)(6), for failure to state a claim.

---

[5] Although styled as "Count XII" in the complaint, the Court infers from the order of the counts that this was a typographical error, and it should be properly referred to as Count XI.

**ANALYSIS**

**1.    Dismissal for Lack of Subject Matter Jurisdiction**

Hearn and Waldo allege that the complaint fails to allege subject matter jurisdiction as to Browne's state law claims against them. Browne asserts subject matter jurisdiction under 28 U.S.C. § 1331, which grants original jurisdiction for claims arising under federal law. The Court can exercise supplemental jurisdiction over state law claims if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). On a "facial challenge" to jurisdiction such as this, the Court accepts all well-pled factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

Hearn and Waldo argue that the only federal claim pled against them is Count II, which alleges a civil rights conspiracy by all four defendants to have Browne "wrongfully accused, arrested, and prosecuted" based on the defendants' false statements. Hearn and Waldo argue that the state law claims against them – malicious prosecution, defamation, slander, false light, intentional and negligent infliction of emotional distress, disclosure of nonconsensual pornography, abuse of process, compensation under the Crime Victim Relief Act, and tortious interference – do not arise out of the same case or controversy as the federal claim.

The Court agrees in part. "Claims are part of the same case or controversy if they 'derive from a common nucleus of operative facts. A loose factual connection between the claims is generally sufficient.'" *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quoting *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). In the sole federal claim, Browne accuses Hearn and Waldo of lying to make her the subject of false prosecution.

Claims arising from those operative facts can support supplemental jurisdiction. Claims based on other aspects of this dispute should be dismissed.

By this standard, the Court can exercise supplemental jurisdiction over Count V, malicious prosecution, and Count XV, abuse of process, because they directly concern the criminal case. Counts VI through IX, and XII, allege false light, defamation and slander based on the purported false statements that prompted the criminal prosecution (*see* Am. Compl. ¶¶ 156, 157, 160-162, 168, 226, 230, 231), so the Court may exercise jurisdiction over those claims. Counts X and XI, intentional and negligent infliction of emotional distress, also concern the statements that led to the prosecution. (*See* Am. Compl. ¶¶ 181, 182, 185, 189, 190, 196, 209, 214, 215). Count XVI, seeking damages for Browne as the victim of a false police report, arises from the same nucleus of facts, because that report prompted the prosecution against Browne.

However, the same is not true of Counts XIII (alleging nonconsensual disclosure of Browne's pictures by Waldo and Hearn) and XVII (alleging Waldo's tortious interference with Browne's book sales). The alleged distribution of Browne's photos did not lead to Browne's prosecution, nor is there any allegation that they influenced the criminal case. The tortious interference claim relates to Browne's book sales, not her criminal case. Although Browne alleges that booksellers refused to sell her books due to "derogatory, misleading, and false comments" by Waldo, Browne does not allege that these were the comments that led to her prosecution. Therefore, she has not shown that this claim arises from the same nucleus of operative fact. The Court will accordingly dismiss Counts XIII and XVII.

**2.   Dismissal for Failure to State a Claim**

The defendants are also seeking to dismiss claims pursuant to Rule 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the pleading, not to decide the merits of the case. *See*

*Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 661, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id*. (citing *Twombly*, 550 U.S. at 570).

The Court considers the federal claims first. Finding that all of the federal claims must be dismissed, the Court will not address the remaining state claims until the issue of jurisdiction is resolved, as explained below.

### a. Count I (§ 1983 Due Process Violation)

In Count I, Browne alleges a claim under § 1983 that Defendants Valparaiso and Kobitz (in his individual capacity) violated Browne's due process rights by conducting a flawed investigation that led to criminal charges against Browne. Specifically, Browne alleges that Kobitz knowingly submitted a false probable cause affidavit, failed to investigate obvious leads, and lied in a subsequent deposition, while Valparaiso maintained a practice of withholding evidence and conducting deficient investigations for potential criminal charges.

With regard to Valparaiso, it is well-established that "[a] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social*

*Servs.*, 436 U.S. 658, 694 (1978). A municipality can be held liable under § 1983 in three ways: "(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a wide-spread practice that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage;' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'" *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). There is no allegation that Valparaiso's policies were "express" policies, nor that the injury to Browne was caused by a policy decision-maker. Therefore, the Court considers option (2): whether the Amended Complaint alleges a wide-spread practice so permanent and well-settled that it was a "custom or usage."

The Court finds that Browne has not stated a § 1983 claim against Valparaiso. The relevant allegations are that Waldo has a "close relationship" with the Valparaiso police (Am. Compl. ¶ 20); that Valparaiso "instituted and maintained unreasonable policies" leading to Browne's arrest (¶ 73); that Valparaiso had policies of lying, not using proper diligence, and withholding evidence (¶ 74); that Valparaiso "employed or operated policies and procedures inadequate for the purposes intended" with respect to Browne (¶ 75); and that Kobitz acted "pursuant to the custom and/or policy of Valparaiso" (¶ 81).

Browne's allegations do not show that these procedures were "permanent or well-settled" customs. Although the allegations refer to Valparaiso "policies," Browne never alleges that these are widespread practices. The complaint seems to allege the opposite – that Valparaiso treated Browne differently because of Waldo's relationship with the police. The fact that Browne's allegations repeat the language of the legal standard, by using the terms "custom" and "policy," does not suffice to state a claim. *See McCauley v. City of Chicago*, 671 F.3d 611, 617-18 (7th Cir.

2011). Instead, Browne must allege facts suggesting that the policies were widespread and well-settled. There is no allegation that these policies were applied to anyone else at all, let alone that they were widespread. The claim will be dismissed as to Valparaiso.

Next, the Court considers whether this claim can proceed against Kobitz in his individual capacity. In essence, Browne alleges that Kobitz violated her due process rights under the Fourteenth Amendment by withholding evidence and failing to investigate evidence that was favorable to her, resulting in a warrant for her arrest and criminal charges. To establish such a claim, Browne must show that (1) the offending actions were taken by someone acting under the color of state law; (2) the conduct deprived her of a constitutionally protected interest; and (3) the alleged deprivation occurred without due process of law. *Martin v. Ind. State Police*, 537 F. Supp. 2d 974, 988 (S. D. Ind. 2008). Browne and Kobitz both analyze this claim under *Brady v. Maryland*, in which the Supreme Court recognized a due process right for criminal defendants to receive exculpatory evidence. 373 U.S. 83 (1963). To establish a *Brady* violation, Browne must show that exculpatory or impeaching evidence was "suppressed" by the state, and caused prejudice to her. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Importantly, the allegations in the complaint do not indicate that evidence in Browne's case was actually "suppressed." Rather, the allegations are that Kobitz disregarded exculpatory evidence and witnesses that Browne identified for him, and drafted a false probable cause affidavit.[6] The distinction is relevant because it means Browne was aware of the missing evidence, so she could present it in her own defense, or challenge any false evidence offered by the prosecution. *Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007) (finding no *Brady* violation

---

[6] Browne also alleges that Kobitz "did not properly serve Browne with the Order of Protection," but it is not clear why this was improper or how it supports the § 1983 claim. Indiana law prescribes that the court issuing the protective order "cause the order . . . to be delivered to the county sheriff for service." Ind. Code § 34-26-5-9(d)(1).

because the criminal defendant was "fully capable of challenging the officers' and prosecutors' contention[s]"); *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001) ("Evidence is suppressed for *Brady* purposes only if . . . the evidence was not otherwise available to the defendant through the exercise of reasonable diligence").

Browne argues that although the charge against her was dismissed, Kobitz violated her due process rights because his investigation led to her being wrongly charged. In general, a *Brady* violation does not arise unless a person is convicted. *Strickler*, 527 U.S. at 281 ("[T]here is never a real 'Brady violation' unless . . . there is a reasonable probability that the suppressed evidence would have produced a different verdict."). Browne points to cases in which courts have appeared to endorse liability under § 1983 for police officers based on the harm caused by improper prosecution and pre-trial detention. *E.g.*, *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988). The Seventh Circuit has considered the possibility of a *Brady* violation without a conviction, but has held that at a minimum, the information would have had to influence "the decision to go to trial." *Bielanski v. Cty. of Kane*, 550 F.3d 632, 645 (7th Cir. 2008) (citing *Carvajal v. Dominguez*, 542 F.3d 561, 569-70 (7th Cir. 2008)); *see also Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011) ("Because [the charges] were dropped at her first post-arrest court appearance, her claim falls outside of the exception recognized in Brady."); The Court concludes that because Browne was never tried, she cannot state a due process claim under § 1983 based on Kobitz's allegedly deficient investigation.

### b. Counts II (Civil Rights Conspiracy) and XIV (Class of One)

In Count II, Browne alleges a claim under 42 U.S.C. § 1985 against all four defendants. Section 1985 prohibits depriving a person of equal protection under the law through a conspiracy motivated by "racial, or other class-based discriminatory animus." *Smith v. Gomez*, 550 F.3d 613,

617 (7th Cir. 2008) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). "To establish the existence of a conspiracy, a plaintiff must show that the conspirators agreed to inflict injury upon him; in other words, that they acted with a single plan, the general nature and scope of which was known to each conspirator." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002).

Here, Browne has not shown that any alleged conspiracy was motivated by class-based animus. Although Browne alleges that the defendants conspired against her partly because of their animus against her as a bi-racial woman, the complaint contains a single allegation of racial or gender animus – namely that Waldo referred to Browne as "Pocahontas." Even assuming that Waldo was motivated by this animus, Browne pleads no facts showing that the other defendants had those motivations, and therefore cannot state a claim of an alleged conspiracy was based on race or gender. Browne's conclusory statements that she was discriminated against, without factual allegations showing that this was due to race or gender, are insufficient. *See, e.g., Calderon v. Vill. of Bridgeview, Illinois*, No. 18 C 8277, 2020 WL 1139252, at *3 (N.D. Ill. Mar. 9, 2020); *Houston v. AIMCO*, No. 18 C 2635, 2019 WL 1077125, at *5 (N.D. Ill. Mar. 7, 2019).

Browne also alleges a "class of one" equal protection claim. Browne must allege that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (citing *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601 (2008)).

It is not enough to allege that she was mistreated; Browne must point to other people who are "prima facie identical in all relevant respects," and state that she was treated differently from them. *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). Although there is no "precise formula," it seems that at minimum, Browne would have to allege that other people accused of the same crime with similar evidence were investigated in a systemically different way

11

than she was.[7] *See McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002-04 (7th Cir. 2004) (discussing the "high burden" of identifying comparators in class of one claims).

Here, Browne has not alleged that she has been treated differently from others similarly situated. Nor has she shown that there was no rational basis for the defendants' actions. In essence, she alleges that the police were wrong to believe Waldo instead of her, based on the evidence and witnesses she identified for the police. Although Browne apparently believes that her evidence was totally exculpatory, that is not apparent from the complaint. *See* § 2(c), *infra*. Faced with conflicting allegations, and no apparent proof, Kobitz was tasked with deciding who to believe. This kind of "discretionary decisionmaking," based on the facts of a particular case, does not sustain a class of one claim, even if Browne claims the decision was influenced by animus. *See U.S. v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) (rejecting class of one claims in the context of prosecutorial discretion); *see also D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (the court "does not ask whether the benign justification was the actual justification. All it takes to defeat the [. . .] claim is a conceivable rational basis for the difference in treatment."); *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 547 (7th Cir. 2008) ("[A] given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity.").

### c. Count III (False or Misleading Probable Cause Affidavit)

In Count III, Browne alleges a claim under § 1983 that Defendants Valparaiso and Kobitz (in his individual capacity) violated Browne's Fourth Amendment rights when Kobitz knowingly

---

[7] Courts have recognized "class of one" claims without comparators where it was obvious that an alleged pattern of conduct was not merely a series of bad decisions, but a deliberate denial of equal protection. *See, e.g., Geinosky*, 675 F.3d at 749 (where a plaintiff allegedly received 24 "bogus parking tickets" in two years, it was not necessary to identify people who did not receive 24 parking tickets). Because this claim essentially stems from one decision – the police crediting Waldo's accusations rather than Browne's – it cannot be said that these allegations demonstrate a similarly broad pattern of conduct.

submitted a false probable cause affidavit against Browne, which Valparaiso "facilitated, approved, condoned, or knowingly turned a blind eye to." As discussed in the analysis of Count I, Browne cannot sustain a § 1983 claim against Valparaiso because she has not pled facts showing that Valparaiso's alleged practices were widespread or well-settled. *See* § 2(a), *supra*. Therefore, Count III is dismissed as to Valparaiso.

Next, the Court considers whether the complaint states a claim against Kobitz in his individual capacity. Kobitz violates the Fourth Amendment if he (1) knowingly, intentionally, or with reckless disregard for the truth makes false statements in requesting the warrant, and (2) the false statements were necessary to the determination that a warrant should issue. *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003). An officer can find probable cause for a warrant if there is "reasonably trustworthy information . . . sufficient to warrant a prudent person in believing" the person committed the crime. *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003).

Here, Browne alleges that Kobitz filed a probable cause affidavit[8] to obtain a warrant based on Waldo's accusations that Browne had distributed nude photographs of her, and that Browne was subsequently charged with distribution of an intimate image. The elements of that crime are (1) the defendant knows or reasonably should know that an individual depicted in an intimate image does not consent to its distribution; and (2) the defendant distributes the image. Ind. Code

---

[8] Although the affidavit itself is not included with any party's briefing, Kobitz requests that the Court take judicial notice of the affidavit, in which Kobitz apparently identifies evidence that Browne obtained the photos from her ex-fiance. The Court may take judicial notice of a document filed in another court "not for the truth of the matters asserted . . . but rather to establish the fact of such litigation and related filings." *Opoka v. I.N.S.*, 94 F.3d 392, 395 (7th Cir. 1996) (citations omitted). Judicial notice is appropriate only when a fact is "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Therefore, the Court takes judicial notice of the fact of that the affidavit was filed, but not of facts asserted by Kobitz in the affidavit itself.

§ 35-45-4-8. If a prudent officer could conclude that those elements were satisfied, Browne's claim fails. *See Knox*, 342 F.3d at 658.

Essentially, Browne's argument is that the evidence she gave to Kobitz established that she was innocent, so his probable cause affidavit was based on statements he knew to be false. Browne gave evidence and witnesses to Kobitz indicating that (1) Waldo directly asked Browne to send the photos to Waldo, and (2) Waldo had been harassing Browne on social media. (Am. Compl. ¶ 27). While this evidence may have been probative as to the distribution of photos between Browne and Waldo, Browne does not identify any evidence she sent to Kobitz that would show that she did not distribute the photos elsewhere, as alleged by Waldo.[9] Kobitz had to make his own assessment of the evidence: Waldo's accusation, his own judgment as to Waldo's credibility, his knowledge that Browne had access to the photos, Browne's evidence that Waldo had been harassing her, and any other evidence he obtained. Kobitz was entitled to substantial deference in this judgment. *See Askew v. City of Chicago*, 440 F.3d 894, 896 (7th Cir. 2006) ("[P]olice often encounter competing and inconsistent stories. . . . The Constitution permits them to initiate the criminal process and leave the sifting of competing claims and inferences to detectives, prosecutors, judges, and juries in the criminal prosecution."). The Court concludes that Browne has failed to state a claim that Kobitz's probable cause affidavit violated Browne's Fourth Amendment rights.

### d. Count IV (False Arrest)

In Count IV, Browne pleads a claim against Valparaiso for "false arrest." The basis for the claim is unclear, since Browne does not allege that she was arrested. *See Bentz v. City of Kendallville*, 577 F.3d 776, 779-780 (7th Cir. 2009) (under Indiana and federal law, a claim of

---

[9] For example, Waldo alleged that Browne posted the photos on Bumble, the online dating site. (Am. Compl. ¶ 38).

false arrest does not exist without an arrest). Browne does not address this claim in her briefing. Accordingly, the claim is dismissed.

### e. Count V (Malicious Prosecution)

In Count V, Browne pleads a claim of malicious prosecution against Hearn, Waldo, and Valparaiso. Under both Indiana and federal law, Browne can sustain a claim for malicious prosecution only if "the original action was terminated in [Browne's] favor." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014). Browne states that the criminal case against her was dismissed without prejudice (Am. Compl. ¶ 62). However, only a conclusive dismissal on the merits counts as a "termination" in Browne's favor; a dismissal without prejudice does not count, because the charges can still be reinstated. *Quiroz v. Hall*, No. 2:12-CV-212, 2012 WL 6019283, at *10 (N.D. Ind. Dec. 3, 2012) (citing *Walker v. Toyota Motor Credit Corp.*, 2007 WL 2500177, at *3-4 (S.D. Ind. Aug. 30, 2007). Browne does not defend the claim in briefing, so it is dismissed.

### 3. Remaining Counts

After the dismissal of the above counts, the only counts remaining are state law claims. Browne states that the Court had original jurisdiction because the claims arose under federal law, and asserted no other basis for jurisdiction. *See* Am. Compl. ¶ 1. With the dismissal of all federal counts, the Court must determine whether to retain supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c). Generally, when federal claims are dismissed before trial and there is no other basis for jurisdiction, the presumption is that the state law claims should be dismissed without prejudice. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). However, that presumption can be overcome in certain circumstances, such as when the parties have expended considerable resources and it would be more efficient to complete the case in federal court. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007).

In this case, discovery has been ongoing for some time, and the Court notes that – although not pled in the complaint – it appears that Browne may attempt to assert diversity jurisdiction. Dismissal without prejudice will not be efficient if it results in Browne attempting to re-file this case from scratch with a different jurisdictional basis. For these reasons, the Court will permit Browne to file a supplemental jurisdictional statement, along with any argument as to why the Court should or should not retain jurisdiction. The defendants will be permitted to file responses. If the Court retains jurisdiction over the remaining claims, it will address defendants' remaining arguments to dismiss those claims. If the Court finds that retaining jurisdiction is not appropriate, the claims will be dismissed without prejudice.

## CONCLUSION

For the reasons described above, the Court **GRANTS in part** the motions to dismiss [DE 26, 28, 32], as described below:

(1) Counts XIII and XVII are **DISMISSED** for lack of subject matter jurisdiction;

(2) Counts I, II, III, IV, V, and XIV are **DISMISSED** for failure to state a claim;

(3) Counts VI, VII, VIII, IX, X, XI, XII, XV, and XVI remain pending, and will be addressed in a later order;

(4) Defendant Kobitz is **DISMISSED** from this action, as no claims remain pending against him;

(5) The Court **ORDERS** Browne to file a supplemental jurisdictional statement by **February 16, 2021**. Any defendant may file a response by **February 23, 2021**.

SO ORDERED on February 1, 2021.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT