**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

KATHY BROWNE,                            )
        Plaintiff,                       )
                                         )
    v.                                   )      CAUSE NO.: 2:20-CV-196-JVB-APR
                                         )
JENNIFER WALDO,                          )
        Defendant.                       )
_____)
                                         )
JENNIFER WALDO,                          )
        Counterclaimant,                 )
                                         )
    v.                                   )
                                         )
KATHY BROWNE,                            )
        Counterclaim Defendant.          )

## OPINION AND ORDER

This matter is before the Court on Defendant/Counter-Plaintiff Jennifer Waldo's Motion for Summary Judgment and Designation of Evidence [DE 233] and on Plaintiff's Motion for Summary Judgment [DE 237]. Both motions were filed on July 14, 2022.

This matter is also before the Court on a Motion to Strike Browne's Reply to Waldo's Summary Judgment Response [DE 266] filed by Waldo on October 21, 2022, and a Motion to Dispute Jennifer Waldo's Forensic Report [DE 322] filed by Plaintiff Kathy Browne on January 27, 2023.

## JURISDICTION

This case was originally filed under federal question jurisdiction. After the Court dismissed the federal claims, the Court decided, on May 5, 2021, to retain supplemental jurisdiction over the remaining state law claims because the criteria for diversity jurisdiction were met. That is, if the Court relinquished supplemental jurisdiction, Browne would be able to refile the remaining claims

in federal court asserting diversity jurisdiction, so retaining jurisdiction serves the purpose of efficiency and does not run contrary to the limits Congress set in determining the limits of subject matter jurisdiction. *See Carr v. CIGNA Secs., Inc.*, 95 F.3d 544, 547 (7th Cir. 1996) (finding diversity of citizenship sufficient to render moot the question of whether retaining supplemental jurisdiction was appropriate in a case transferred by the multidistrict panel); *see also Ramirez v. Mandarich Law Grp., LLP*, No. 18-CV-3257, 2020 WL 1482366, at *4 (N.D. Ill. Mar. 25, 2020) ("[I]f diversity jurisdiction applies, then that would be an independent basis to retain [supplemental] jurisdiction.").

On March 17, 2023, Browne filed a Notice of Appeal regarding an order the Court issued on the disbursement of funds from the settlement of claims Browne brought against Anna Hearn in this matter. "The filing of a notice of appeal does not automatically divest a district court's jurisdiction in all respects." *INTL FCStone Fin. Inc. v. Jacobson*, 950 F.3d 491, 502 (7th Cir. 2020). A district court may exercise jurisdiction over parts of a case when there is a pending appeal so long as "there is no concurrent exercise of power on the same subject and little overlap of issues." *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989); *see also United States v. Real Prop. Located at 886 N. Hamilton St. Clair Cnty., Marissa, Ill.*, 34 F. App'x 235, 237 (7th Cir. 2002) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*." (emphasis added) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982))). "The distribution of authority to decide depends on practical rather than formal considerations." *Apostol*, 870 F.2d at 1337. Under the "collateral order" doctrine, "the district court can go about its business handling the principal claims in a case while the circuit court addresses 'issues separate from the merits.'" *Herx v. Diocese of Fort Wayne-*

*South Bend, Inc.*, No. 1:12-CV-122, 2014 WL 5431583, at *1 (N.D. Ind. Oct. 23, 2014) (quoting *Apostel*, 870 F.2d at 1338). The instant motions are on a separate matter—the claims Browne has brought against Waldo and the counterclaims Waldo has brought against Browne—than the funds disbursement issue raised in the appeal. Therefore the Court retains jurisdiction to resolve the instant motions.[1]

## PROCEDURAL BACKGROUND

Browne, who was represented by counsel at the time, initiated this cause of action by filing a complaint on May 13, 2020. She filed an amended complaint on July 2, 2020. On July 16, 2020, Waldo filed her answer to the amended complaint and a counterclaim against Browne.

On February 1, 2021, the Court issued an order on three motions to dismiss Browne's complaint. Only claims VI (defamation), VII (defamation *per se*), VIII (slander), IX (slander *per se*), X (intentional infliction of emotional distress), XI (negligent infliction of emotional distress), XII (false light), XV (abuse of process), and XVI (Crime Victims Relief Act) survived.[2] On May 5, 2021, the Court dismissed the claim for negligent infliction of emotional distress and the claim brought under the Crime Victims Relief Act. On May 13, 2021, The Court dismissed claims of intentional infliction of emotional distress and false light publicity as to the City of Valparaiso but did not dismiss those claims as to Waldo or Hearn. On Browne's request, the Court dismissed the claim of intentional infliction of emotional distress against Waldo on October 11, 2022. Accordingly, the claims currently pending against Waldo allege defamation, defamation *per se*, slander, slander *per se*, false light, and abuse of process.

---

[1] Browne does, at times, levy accusations against Hearn in her briefs, but the Court takes no action on those accusations because Hearn has been terminated from this litigation and because the Court lacks jurisdiction to address those matters while the appeal remains pending.

[2] All of these claims were brought against Waldo. Some of the claims were also brought against other defendants, but that is immaterial to the outcome of the present motions, and all other defendants have been terminated from this lawsuit.

Waldo's counterclaim against Browne brings claims for intentional infliction of emotional distress, defamation, specific performance, unlawful dissemination of images, disclosure of intimate images, and false light.

Browne's attorney, Andrea Ciobanu, filed a motion to withdraw on March 22, 2022. The Court granted that motion on March 25, 2022, and Browne has been litigating *pro se* since that date.

Waldo and Browne both filed motions for summary judgment on July 14, 2022. Waldo's motion was accompanied by exhibits, a memorandum, and a separate statement of material facts. Browne submitted multiple binders with her motion and filed an addendum on July 15, 2022. Browne responded on Waldo's motion on July 22, 2022, and Waldo replied on August 25, 2022. Waldo responded to Browne's motion on July 25, 2022, including a response to Browne's statement of material facts. Browne replied to the motion for summary judgment on August 30, 2022, and replied to the statement of material facts on September 7, 2022.

In her October 21, 2022 motion to strike, Waldo asked the Court to strike Browne's reply to her motion for summary judgment, and Browne responded to Waldo's motion on October 26, 2022.

On December 7, 2022, the Court issued an order on the binders submitted to the Court with Browne's motion for summary judgment. The relevant documents were docketed, and the irrelevant documents were stricken. The Court permitted the filing of amended response and reply briefs, which were filed on January 17, 2023, and January 27, 2023, respectively.

On January 27, 2023, Browne asked the Court to strike Waldo's forensic report on spoliation grounds. The Court suspended Local Rule 56-1(f) as to the motion. Waldo filed a response on February 13, 2023, and Browne filed a reply on February 16, 2023.

## MOTION TO STRIKE REPLY

Waldo has asked the Court to strike Browne's reply in support of her motion for summary judgment. On January 27, 2023, an amended reply was filed, so the Court denies the motion to strike the earlier (and now superseded) reply as moot.

## MOTION TO STRIKE EVIDENCE

Browne asks the Court to strike Waldo's forensic report due to spoliation of evidence. In a diversity[3] case, "the Indiana state law standard, and not the federal standard, applies" to requests for sanctions due to pre-suit spoliation. *ArcelorMittal Indiana Harbor LLC v. Amex Nooter, LLC*, No. 2:15-CV-195, 2018 WL 509890, at *4 (N.D. Ind. Jan. 23, 2018) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 53-54 (1991)). "Indiana courts define spoliation as '[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usually a document.'" *J.S. Sweet Co., Inc. v. Sika Chemical Corp.*, 400 F.3d 1028, 1032 (7th Cir. 2005) (quoting *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000)).

Browne alleges that Waldo did not preserve her phone despite being sent a preservation letter on February 6, 2020. Browne submits that Waldo confirmed that she switched both her phone and her phone company and also stated that she downloaded the Bumble dating app on her phone, logged in, and later deleted the app. (Browne Mot. Strike at 2, ECF No. 322; Waldo Dep. 26:23-27:5, ECF No. 298-10). Browne does not clarify when any of these events occurred. Waldo indicates that her new phone was activated in January 2020. (Waldo Dep. 12:12-25, ECF No. 332-1). This change in phones occurred before the preservation letter was sent, and, furthermore, the data from Waldo's former phone was ported to the new phone. Waldo testified that when she switched phones, "I wanted to save everything on my old phone, which I did." (Resp.

---

[3] As noted above, all of the pending claims are based on state law and the criteria for diversity jurisdiction are met, so this is a diversity case for all practical purposes.

Mot. Strike Ex. A 12:2-3, ECF No. 332-1). She took screenshots to preserve written communication between Waldo and Browne, and her new phone has all of her data from her old phone. *Id.* at 12-14. Waldo submits that the use of the Bumble app occurred on or about October 1, 2019, and identifies evidence in support. *See* (Waldo Aff. Ex. 21, ECF No. 233-2). Waldo also maintains that she produced information regarding Bumble during discovery. *See id.* at 73-81. Browne has not shown that any relevant evidence was intentionally destroyed, mutilated, altered, or concealed.

Browne asserts that Waldo refused to comply with a subpoena to allow Browne's forensics team to analyze her phone and suspended her deposition. However, Browne has not submitted evidence in support of this contention. Additionally, this dispute is better suited to a motion to compel, which Browne did not properly file during discovery.

Browne asks the Court to compel Waldo to divulge the credentials to her Bumble account so that the account can be forensically analyzed. This relief is improper at this juncture because discovery is closed and has been since February 10, 2022. Further, the evidence presented is that Waldo did not create the account in question; she was able to view the photographs loaded onto the account, but she was unable to remove the photographs. *Id.* at 18:24-21:25. Browne has not presented evidence to suggest that Waldo has the information that Browne wants, so the Court would deny relief on this basis even if discovery were still open.

Alternatively, Browne asks for sanctions in light of the spoliated evidence. Browne specifically asks that Waldo not be permitted to introduce her forensics report as evidence. Browne has failed to establish that spoliation occurred, so the Court will not provide the requested relief. The Court denies this motion.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying the evidence, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

7

## MATERIAL FACTS

Waldo attests that she and Browne were friends between 2017 and 2019 who communicated with each other via text. (Waldo Aff. ¶ 3, ECF No. 233-2).

### A. The Parties' Relationships with Rafer Weigel

In late 2018 and early 2019, Browne was engaged to marry Rafer Weigel, but the engagement was broken off. *Id.* at ¶ 6. Weigel sent Waldo a message on Instagram on March 24, 2019, stating, "Nice picture," and Waldo began communicating with Weigel on June 23, 2019. (Waldo Aff. ¶ 7 and Waldo Aff. Ex. 20, ECF No. 233-2). Waldo and Weigel had a relationship from June through early August 2019. (Waldo Aff. ¶ 8, ECF No. 233-2). During the relationship, Waldo sent Weigel a series of intimate photographs. *Id.* The relationship between Waldo and Weigel eventually soured and ended. *Id.* at ¶ 9.

### B. Waldo's Contact with Dr. David Mueller

In June or July 2019, Waldo reached out to a Dr. David Mueller on Instagram. (Mueller Aff. Ex. A, ECF No. 298-9). Waldo and Mueller communicated regarding Browne: Mueller "had nothing bad to say" about Browne, and Waldo "revealed that a neighbor of hers, Brian Oller, had raped her and put ghost peppers in her vagina because she could not get Ms. Browne to go out with him." *Id.* Waldo indicated that she would send Mueller a nude video of Browne after obtaining it from Weigel. *Id.* Mueller blocked Waldo in approximately August 2019 before Waldo sent any nude video of Browne to him. *Id.* At a hearing in the protective order case *R.W. v. J.W.*, No. 64D05-1909-PO-8995, Waldo testified that Weigel wanted Waldo's help to "create a fake account, an Instagram account to find out who Kathy's boyfriend was, the surgeon's name that she was dating, because he had a naked video of her that he wanted to send to him." (Transcript of Proceedings 65:14-16, *R.W. v. J.W.*, No. 64D05-1909-PO-8995 (Porter Super. Ct. Oct. 30, 2019), ECF No. 298-

13) (hereinafter "*R.W. v. J.W.* Transcript"). Waldo testified that she declined to help Weigel. *Id.* at 65:17-18.

### C. Request for Communication to Stop

Between August 11 and mid-September 2019, Waldo, Weigel, and Browne exchanged correspondence; Waldo requested that the correspondence cease and stated that, if it did not, she would contact the police. (Waldo Aff. ¶ 10 and Waldo Aff. Exs. 9-18, ECF No. 233-2). Weigel and Browne also asked for the communication to cease. (Waldo Aff. Exs. 9, 16, ECF No. 233-2).

### D. Communication Between Browne and Waldo Regarding Intimate Photographs

On August 24, 2019, Browne sent Waldo a series of intimate photographs that Waldo had sent to Weigel during their relationship. (Waldo Aff. ¶ 11, ECF No. 233-2). Browne wrote: "Hi [J]ennifer. I just heard someone say that they were sending these photos to your children's school. I'm very worried about you. Are you OK? Be more careful when send these photos out!!! I don't want your children and husband to see them." (Waldo Aff. Ex. 10, ECF No. 236-1). Waldo responded to Browne saying "Kathy congrats this is a felony" and "Please get help and this is sent to the police. You just committed a felony look it up darling thank you now [I] have all [I] need." *Id.*; (Waldo Aff. ¶ 12, ECF No. 233-2). Waldo's neighbor Brian Oller, by affidavit, testifies that on approximately August 29, 2019, Waldo told him, "You are going to enjoy seeing your girlfriend's mugshot. I had her send me photos she shouldn't have." (Oller Aff. ¶¶ 2-3, ECF No. 241-1).

On September 11, 2019, Browne sent an email to Waldo stating:

Do your children and husband know you send trashy photos of your infected vagina to men in [*sic*] who are in relationships. Geez. You're so desperate it's disgusting. Poor Margie had no idea what a tramp you are. Brian Oiler [*sic*] said, you have bad skin and your vagina looks like an old steak.

(Waldo Aff. ¶ 14 and Waldo Aff. Ex. 11, ECF No. 233-2). Later on the same date, Waldo sent an email to Browne regarding revenge pornography statutes in New Jersey, Wisconsin, and Idaho. (Waldo Aff. ¶ 15 and Waldo Aff. Ex. 14, ECF No. 233-2).

### D. September 2019 Report to the Police

On September 20, 2019, Waldo went to the Valparaiso, Indiana, police station with her attorney, Anna Hearn, to report the revenge pornography issue and concerns about Browne and Weigel. (Waldo Aff. ¶ 16, ECF No. 233-2; Kobitz Dep 32:10-16, ECF No. 233-3). Sergeant Stephen Kobitz was provided with a protective order prepared by Waldo's counsel and agreed to serve a protective order against Browne. (Waldo Aff. ¶ 17, ECF No. 233-2; Kobitz Dep 7:15-24, ECF No. 233-3). In the Ex Parte Order For Protection filed on September 20, 2019, $10,000 is listed as costs or fees Waldo has a result of bringing the case; the cost is connected to "revenge porn." (Ex Parte Order, *Waldo v. Browne*, No. 64D05-1909-PO-8994 (Porter Super. Ct. Sept. 20, 2019), ECF No. 298-1 at 4) (hereinafter "Ex Parte Order"). The narrative description of events that accompanies the Ex Parte Order states that Weigel and Browne were harassing and threatening Waldo. (Ex Parte Order at 8, ECF No. 298-1 at 10).

### E. Bumble Social Media Account

On October 1, 2019, Waldo received an email from the social media app Bumble about a profile created in her name. (Waldo Aff. ¶ 18 and Waldo Aff. Ex. 21, ECF No. 233-2). The "About Me" section of the profile read "Tramp with herpes" and the "My work & education" section read "Prostitute at Home." (Waldo Aff. ¶ 18 and Waldo Aff. Ex. 21, ECF No. 233-2). Waldo did not create this Bumble account and does not and has not ever had a Bumble account. (Waldo Aff. ¶ 19, ECF No. 233-2). Waldo was able to get into the Bumble account by resetting the password. (*R.W. v. J.W.* Transcript 91:19-23, ECF No. 298-13). On October 2, 2019, Waldo and Hearn returned to

10

the Valparaiso police station and filed a report concerning the Bumble account, advising that she suspected that either Browne or Weigel created the account. (Waldo Aff. ¶ 20 and Waldo Aff. Ex. 22, ECF No. 233-2).

### F. January 2020 Court Hearing

On January 15, 2020, the parties participated in a hearing in Cause No. 64D05-1909-PO-8994 in Porter County, Indiana. (Transcript of Proceedings at 1, *Waldo v. Browne*, No. 64D05-1919-PO-8994 (Porter Super. Ct. Jan. 15, 2020) (hereinafter "*Waldo v. Browne* Transcript"), ECF No. 233-8). At that hearing, Waldo was represented Anna Hearn and Browne was represented by Ken Elwood. *Id.* at 2. During the hearing, Elwood designated an intimate image of Browne, which Hearn later referenced during Waldo's testimony. *Id.* at 6:22-7:23, 24:8-12. Hearn had provided the photo of Browne to Elwood, which Elwood characterized as an "insufficiently unredacted topless photo." (Elwood Aff. ¶¶ 3, 5, ECF No. 298-8). Browne's sister, who attended the hearing, swears in her affidavit that she could discern that Browne was humiliated in front of the court and was in tears at one point. (Moehling Aff. ¶ 5, ECF No. 241-5 at 22).[4] The protective order against Browne in Porter County Indiana was dismissed on Waldo's request because the parties agreed not have any kind of contact with each other or family members, with a written agreement to follow. (Order Dismissing Petition, *Waldo v. Browne*, No. 64D05-1919-PO-8994 (Porter Super. Ct. Jan. 15, 2020), ECF No. 233-6) (hereinafter "Order Dismissing Petition").

### G. April 2020 Petition for Protective Order

On April 7, 2020, Waldo filed a petition for an order of protection against Browne for refusing to sign the agreed no-contact order and non-disparagement clause, making social media posts with allusions to the fractured relationship between Waldo and Browne, and making

---

[4] Waldo objects to portions of this affidavit as containing hearsay, and there are hearsay statements in the affidavit, but the matter for which the affidavit is cited here is not hearsay, as they are the declarant's personal observations.

allegations to a Chicago Tribune reporter, Jerry Davich, about Waldo's sexual misconduct concerning an article he wrote about "Masks for NWI Healthcare Workers." (Waldo Aff. ¶ 23 and Waldo Aff. Ex. 23, ECF No. 233-2).

### H. Waldo's Motive When Contacting the Police

Waldo contacted the police solely because she wanted Browne and Weigel to stop contacting her. (Waldo Aff. ¶ 26, ECF No. 233-2). Waldo filed protective orders against Browne with the purpose of having Browne leave Waldo alone and stop all communication with Waldo or her family. *Id.* at ¶ 29. Waldo did not have the motive to embarrass, annoy, or ridicule Browne when she filed the protective orders. *Id.*

### ANALYSIS

### A. Pro Se Litigation Standards

The filings of unrepresented parties are to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, *pro se* litigants must follow the applicable federal and local rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

The Court has construed Browne's filings liberally. However, the Court cannot overlook instances where Browne has failed to cite to evidence supporting her statements of material fact. *See* N.D. Ind. L.R. 56-1(a)(3)(B), (b)(2)(C). Additionally, in accordance with Local Rule 56-1(e), the Court has deemed unsupported certain facts where Browne has failed to include a page or paragraph number in her citations to the evidence. The section above on material facts reflects this and does not include Browne's assertions that are unsupported by evidence. The material facts as reported by the Court do not include facts that are supported with evidence but are not material or relevant to the resolution of the pending motions for summary judgment.

**B. Browne's Claims Against Waldo**

As noted above, the claims in Browne's amended complaint that remain pending are defamation, defamation *per se*, slander, slander *per se*, false light, and abuse of process. Though Browne makes multiple references to perjury, fraud, bad faith, gross neglect, and willful misconduct in her briefs, "[a] plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir. 2009). In addition to not allowing amendment through briefs in opposition, the Court also sees no reason to allow such amendment through a plaintiff's brief *in support* of a motion for summary judgment.

Though Federal Rule of Civil Procedure 15(a)(2) dictates that leave to amend pleadings should be freely given when justice so requires, Browne has not explicitly asked for leave to amend. Further, though the federal rule contemplates amendments even during or after a trial, Waldo has explained how she would be prejudiced by amendment at this late hour: discovery has closed, and Waldo had no fair notice that she would be expected to defend against such claims. The only pending claims brought by Browne are those from the amended complaint that have not been dismissed. Browne does not have claims pending against Waldo for perjury, fraud, bad faith, gross neglect, or willful misconduct.

The parties do not dispute that Indiana law applies to Browne's state law claims against Waldo, so the Court applies Indiana law.

*1.     Defamation*

In Indiana, slander is a form of defamation. *Baker v. Tremco Inc.*, 917 N.E.2d 650, 657 (Ind. 2009). The elements of an Indiana defamation claim are a communication with defamatory imputation, malice, publication, and damages. *Trail v. Boys & Girls Clubs of N.W. Ind.*, 845

N.E.2d 130, 136 (Ind. 2006). The malice element is not required where, as is the case here, the dispute is between private individuals and is not related to a matter of public concern. *Charles v. Vest*, 90 N.E.3d 667, 672 (Ind. Ct. App. 2017). In a defamation *per se* claim, which is a type of defamation action, damages are presumed. *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010). A statement is defamatory if it tends "to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007) (internal citation omitted). Under Indiana law, truth is a complete defense to a civil defamation claim. Ind. Const. art. I, § 10; *Melton v. Ousley*, 925 N.E.2d 430, 437 (Ind. Ct. App. 2010).

Thus, whether the claim is for defamation, defamation *per se*, slander, or slander *per se*, a communication with defamatory imputation and publication are necessary elements for a successful claim. Browne has largely failed to present evidence of any defamatory statements. She asserts that Waldo, with a non-party, made "defamatory reviews on Amazon to harm Browne's reputation,"[5] (Browne Resp. p. 8, ECF No. 241), but she presents no evidence of what the statements were, and the Court will not accept Browne's legal conclusion that the undisclosed reviews are defamatory in nature. She cites "Exhibit Waldo and Rafer Weigel," but this does not identify for the Court the evidence that Browne wishes to use to support her statements.

Browne also states that Waldo told her neighbor, Brian Oller, that she got Browne to send Waldo's pictures to Waldo. (Resp. at 4, ECF No. 241; *see also* Oller Aff., ECF No. 241-1 at 8). However, this is consistent with Browne's assertions that Waldo asked Browne to send her the photographs. Furthermore, Browne has not shown this statement to have any defamatory imputation.

---

[5] Browne also states that Waldo deleted the review after Browne filed this lawsuit.

Browne contends that Waldo told a David Mueller that Waldo was being sexually abused "because of" Browne and that Browne was harassing Waldo. (Browne's Resp. at 9, ECF No. 241). Browne cites to the affidavit of David Mueller. The affidavit and its attached exhibit do not provide evidence that Waldo said Browne was harassing Waldo, and the statement regarding sexual abuse is that Waldo's neighbor "raped her and put ghost peppers in her vagina because she could not get Ms. Browne to go out with him." (Mueller Aff. Ex. A at 1, ECF No. 298-9). No reasonable jury could conclude that this quoted statement is a statement with defamatory imputation *to Browne*.

Browne maintains that, in 2017, 2018, and 2019, Waldo told a Brian Oller that she and Browne were best friends and that she could get Browne to come to his house for a sexual liaison. (Resp. Judge's Orders at 2, ECF No. 265). Browne cites to no evidence in support of this assertion. Without evidence, this alleged statement cannot be used to withstand summary judgment.

For the first time in her reply, Browne states that Waldo accused Browne of harassing Waldo by contacting a Jerry Davich and "the medical board." (Rep. at 6, ECF No. 321). Browne cites to an "Exhibit 22," which appear to be pages from an unidentified transcript. No page or line number is provided to identify what part of this document fragment Browne believes to support her statement. Also in the reply, Browne asserts that Waldo falsely accused Browne of a sex crime in two states. *Id.* at 16. Browne cites to the affidavit of David Mueller, which was submitted with Browne's evidence in support of summary judgment. The affidavit and its attached exhibit do not provide evidence that Waldo accused Browne of a sex crime. (Mueller Aff. Ex. A at 1, ECF No. 298-9). Arguments raised for the first time in reply are waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011). Further, even if the arguments were not waived, no reasonable jury could conclude that Browne's cited evidence establishes that Waldo made a statement with defamatory imputation to Browne.

Browne asserts that Waldo made the following statements to law enforcement. In pursuit of a protective order on September 20, 2019, Waldo stated that Browne harassed Waldo by sending intimate photographs of Waldo to Waldo and by advising that someone would send the photographs to Waldo's children's school. Browne appears to be alluding to this text that Browne sent: "Hi [J]ennifer. I just heard someone say that they were sending these photos to your children's school. I'm very worried about you. Are you OK? Be more careful when send these photos out!!! I don't want your children and husband to see them." (Waldo Aff. Ex. 10, ECF No. 236-1). In the narrative description of events that accompanies Waldo's Ex Parte Order for Protection filed on September 20, 2019, Waldo wrote that Weigel and Browne were harassing and threatening Waldo. (Ex Parte Order at 8, ECF No. 298-1 at 10). Browne maintains that, on October 1, 2019, Waldo claimed in a police report that Browne used Waldo's email address to create a Bumble account to post Waldo's intimate photos. However, the evidence is that Waldo stated she "suspects the account was created by Kathy Browne or Rafer Weigel." (Waldo Aff. Ex. 22, ECF No. 233-2). Browne also asserts that, on May 14, 2020, Waldo filed a police report in which she accused Browne of threatening her over the phone for 4 minutes. The document cited as evidence is unsigned, undated, and unauthenticated, and Waldo's name does not appear on the document. *See* (Browne's Ex. "Police Reports" at 7, ECF No. 298-2); *see also* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is"). Browne has failed to show that Waldo made this statement.

In addition to the evidentiary issues with some of these statements, the statements are protected by qualified privilege. The Court looks to the privilege law of Indiana because "in a civil

case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501.

It is first Waldo's burden to establish that there is "a privileged occasion for the publication, by proof of a recognized public or private interest which would justify the utterance of the words." *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009) (quoting *Bals v. Verduzco,* 600 N.E.2d 1353, 1356 (Ind.1992)). Waldo has met this burden. "[I]t is well established that in Indiana, communications made to law enforcement to report criminal activity are qualifiedly privileged." *Id.* at 763 (quoting *Kelley v. Tanoos,* 865 N.E.2d 593, 600 (Ind.2007)).

The burden then shifts to Browne to show that the privilege is being abused. *Id.* at 762. This qualified privilege for statements made to report criminal activity to law enforcement does not reach statements where "(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Id.* at 763-764 (citing *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992)). Waldo contends that her statements to law enforcement are covered by the privilege and that none of the exceptions apply. Browne confuses the asserted qualified privilege with qualified immunity. As qualified immunity is not asserted, Browne's citation and argument regarding it are immaterial. Browne has not met her burden to show that the qualified privilege is being abused, so the Court finds that Waldo's statements to law enforcement above are privileged and cannot be used to support a defamation action.

Accordingly, without evidence from which a reasonable jury could conclude that Waldo made an unprivileged statement with defamatory imputation against Browne, the Court grants summary judgment in favor of Waldo and against Browne on Browne's claims of defamation, defamation *per se*, slander, and slander *per se*.

17

    2.    *False Light*

A false light claim is a variety of an invasion of privacy claim. *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 524 (Ind. Ct. App. 2001). Indiana takes the elements for a false light claim from the Restatement (Second) of Torts § 652E:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Branham*, 744 N.E.2d at 524. In other words, for a false light claim to succeed, the speaker should know that the one talked about, as a reasonable person, "would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." *Curry v. Whitaker*, 943 N.E.2d 354, 360 (Ind. Ct. App. 2011).

As with defamation, truth is a defense to a claim of false light; without a false statement, there can be no false light. *Miller v. Cent. Indiana Cmty. Found., Inc.*, 11 N.E.3d 944, 958 (Ind. Ct. App. 2014) (citing *Newman v. Jewish Cmty. Cr. Assn. of Indpls.*, 875 N.E.2d 729, 736 (Ind. Ct. App. 2007)). Though defamation and false light claims are similar, different interests are protected: defamation pursues redress for reputational harm, and false light claims vindicate emotional injury and mental suffering. *Curry*, 943 N.E.2d at 359.

For the purpose of a false light claim, a person "gives publicity" when "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (quoting Restatement (Second) of Torts § 652E cmt. c (1977)).

18

The statements discussed above in the Court's analysis on defamation require consideration here. Browne has not met her evidentiary burden regarding unidentified and unspecified statements. Arguments raised in reply remain waived. No reasonable juror could find that the statement that Waldo told Brian Oller that she got Browne to send Waldo's pictures to Waldo would place Browne in a false light that is highly offensive to a reasonable person (and, by Browne's version of the facts of the case, is true and would thus be incapable of supporting a false light claim). Neither could a reasonable juror find that the statement regarding the alleged sexual abuse of Waldo by a third party places Browne in a false light that would be highly offensive to a reasonable person.

Regarding the statements made to law enforcement in pursuit of protective orders or for the purposes of police reports, Browne has failed to show that Waldo gave publicity to these statements by "communicating [them] to the public at large, or to so many persons" that public knowledge was substantially certain. *Curry*, 943 N.E.2d at 360 (finding that statements made in police reports and to HOA board members were not publicized for the purpose of a false light claim).

Browne presents no evidence in support of her contention that "Waldo worked with Anna Hearn to get Browne's criminal charges printed and published in the Chicago Tribune and the NW Indiana Times." (Browne's Resp. at 10, ECF No. 241). She has also not presented evidence that anything published about her was false; notably, a report that Browne was charged with a criminal offense is not a report that Browne committed that offense. Furthermore, journalistic coverage of matters, in which a defendant takes no part, cannot be used to support the contention that the defendant publicized the subject matter. *Hudkins v. City of Indianapolis*, No. 1:13-CV-1179, 2015 WL 4664592, at *27 (S.D. Ind. Aug. 6, 2015).

Browne asserts that Waldo's use and discussion of Browne's intimate photograph during a court hearing in a protective order case was irrelevant to the proceeding. Browne notes that the press was at the hearing. However, Browne presents no evidence by which to conclude that there was something false about the photograph in question, so a false light claim cannot be based on this photograph.

Browne's claim for invasion of privacy by placing her in a false light does not survive Waldo's motion for summary judgment.

### 3.    Abuse of Process

Under Indiana law, the two elements of an abuse of process claim are "(1) ulterior purpose or motives; and (2) a willful act in the use of process not proper in the regular conduct of a proceeding." *Donovan v. Hoosier Park, LLC*, 84 N.E.3d 1198, 1209 (Ind. Ct. App. 2017) (quoting *Watson  v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005)). "If a party's 'acts are procedurally and substantively proper under the circumstances' then [their] intent is irrelevant.'" *Watson*, 822 N.E.2d at 1029 (quoting *Reichhart v. City of New Haven,* 674 N.E.2d 27, 31 (Ind.Ct.App.1996)). "The purpose for which the process is used is the only thing of importance." *National City Bank, Indiana v. Shortridge*, 698 N.E.2d 1248, 1252 (Ind. 1997) (quoting *Display Fixtures Co. v. R.L. Hatcher, Inc.*, 438 N.E.2d 26, 31 (Ind. Ct. App. 1982)).

"A party may not be held liable for abuse of process if the 'legal process has been used to accomplish an outcome which the process was designed to accomplish.'" *Watson*, 822 N.E.2d at 1029 (quoting *Reichhart*, 674 N.E.2d at 31). To succeed on an abuse of process claim, a plaintiff must show that the defendant used a part of the judicial process "to accomplish a goal other than that which the law was designed to accomplish." *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1008 (N.D. Cal. 2015) (applying Indiana law).

Browne has alleged that Waldo "only attempted to obtain the protective order against Browne as an attempt to harass Browne, cause Browne financial harm, and damage Browne's reputation." (Am. Compl. ¶ 278, ECF No. 20). Here, at the summary judgment stage, Browne must present "some *evidence* tending to show that the defendant used process for an end other than that for which it was designed." *Conner v. Howe*, 344 F. Supp. 2d 1164, 1175 (S.D. Ind. 2004) (emphasis added).

Browne identifies that Waldo sought $10,000 in damages in seeking a protective order against Browne on September 20, 2019. However, the Ex Parte Order of Protection indicates that the $10,000 is sought as "[o]ther costs or fees [Waldo has] as a result of bringing this case" and connected to the alleged revenge porn. (Ex Parte Order, ECF No. 298-1 at 4) (hereinafter "Ex Parte Order"). Browne contends that Waldo sought to financially profit from the lawsuit, but the only evidence before the Court is that this monetary amount was sought to reimburse Waldo for expenses incurred, which is an acceptable reason to seek a financial award in a lawsuit.

Browne also submits evidence that Waldo "thanked" Browne for sending Waldo's photographs to her and that Waldo told her neighbor, Brian Oller, that Waldo got Browne to send Waldo the photographs. (Waldo Aff. ¶ 12, ECF No. 233-2; Waldo Aff. Ex. 10, ECF No. 236-1 ("Please get help and this is sent to the police. You just committed a felony look it up darling *thank you* now [I] have all [I] need." (emphasis added))); (Oller Aff. ¶¶ 2-3, ECF No. 241-1 ("I had her send me photos she shouldn't have.")). This is not enough to withstand summary judgment on Browne's abuse of process claim. Neither does Browne's assertion that Waldo sought a protective order against Browne in order to embarrass Browne alleviate Browne's need to present *evidence* of an ulterior motive.

Browne contends that Waldo's voluntary dismissal of the protective orders against Browne shows that "Waldo put on a charade for the courts." (Browne's Resp. at 7, ECF No. 241). She asserts that the voluntary dismissals establish that Waldo did not actually fear Browne and require a protective order against her. *Id.* at 10. The evidence shows that the January 15, 2020 dismissal of the protective order was premised on the parties' agreement not have any kind of contact with each other or family members. (Order Dismissing Petition, ECF No. 233-6). There is insufficient evidence here from which a reasonable jury could believe that the pursuit of the protective order was a charade. Waldo had expressed that she wished for contact to cease. (Waldo Aff. ¶ 10 and Waldo Aff. Ex. 9-18, ECF No. 233-2). Having received that relief by agreement, her request to dismiss the protective order is consistent with her stated aims.

Browne argues that Waldo's improper motive was "to garner attention, to embarrass Browne[,] and to sue Browne for [$]10,000." (Browne's Resp. at 7, ECF No. 241). The $10,000 request is addressed above. Browne does not designate any evidence in support of these arguments. At this procedural phase, Browne must do more than merely assert something to be the case. Evidence is needed.

Browne asserts that Waldo's use and discussion of Browne's intimate photograph during a court hearing in a protective order case was irrelevant to the proceeding and used to embarrass Browne. There is evidence that Browne was humiliated by her photograph being used during the hearing. (Moehling Aff. ¶ 5, ECF No. 241-5 at 22). However, it was Browne's attorney who first designated the photograph and used it in the hearing, not Waldo or her counsel. (*Waldo v. Browne* Transcript at 6:22-7:23, 24:8-12, ECF No. 233-8). Browne's attorney said in his opening statement at the hearing that the photographs would be discussed, the hearing was about dismissal of the PO, and terms of the agreement were to be put on the record. *Id.* at 3:15-4:4. Browne, through her

counsel's statements, endorsed the use of the photograph at the hearing. Browne's abuse of process claim against Waldo cannot rest on the use of the photograph.

Browne contends that Waldo "intentionally filed a false police report to have Browne arrested." (Browne's Mot. Summary J. 5, ECF No. 237). However, Browne cites no evidence in support. Additionally, Browne has not provided evidence of in improper goal on Waldo's part in pursuing her claim through the courts. Instituting a legal action with malice and without probable cause is part of a malicious prosecution claim, it is not the basis for an abuse of process claim. *See Barrow v. Weddle Bros. Constr.*, 316 N.E.2d 845, 854 (1974) ("Thus, if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process.") (quoting W. Page Keeton et al., *Prosser and Keeton on Torts* § 121 (4th ed.1971)).

Browne has not presented sufficient evidence to withstand summary judgment on her abuse of process claim. The Court has considered Browne's remaining arguments against granting summary judgment in Waldo's favor. None have merit. Waldo is granted summary judgment in her favor on the pending claims against her.

### C. Waldo's Claims Against Browne

Though Waldo does not move for summary judgment as to her claims against Browne, Browne raises the question of whether Waldo has stated a claim in Browne's cross motion for summary judgment.[6] Additionally, Browne asserts that sanctions should be issued against Waldo. (Browne's Mot. Summary J. at 24, ECF No. 237). Unfortunately for Browne, she has not

---

[6] Browne also alludes to summary judgment as to Waldo's counterclaims against her in her response to Waldo's motion for summary judgment. Browne also asks for dismissal of the counterclaims, making statements that appear to ask for relief under Rule 12(c). (Browne's Resp. at 18, ECF No. 241). However, a response to a motion for summary judgment on Browne's claims is not the proper place in which to ask for judgment on the pleadings on Waldo's counterclaims, so the request for judgment on the pleadings is denied because it is not properly before the Court. *See* Northern District of Indiana Local Rule 7-1(a) ("Motions must be filed separately . . . .").

sufficiently articulated her arguments on these matters. Without a properly developed argument, the Court cannot determine that Browne is entitled to the relief she requests. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.") Therefore, the Court denies the request to issue a ruling on Waldo's counterclaims.

### D. Sealed Evidence

The Court provisionally sealed Browne's evidence in support of her motion for summary judgment and set a deadline for the filing of motions to maintain the seal. That deadline has passed, and no motion in support of maintaining the seal has been filed. Accordingly, the Court unseals that evidence on the docket.

### CONCLUSION

Based on the above, the Court hereby **GRANTS** Defendant/Counter-Plaintiff Jennifer Waldo's Motion for Summary Judgment and Designation of Evidence [DE 233] and **DENIES** Plaintiff's Motion for Summary Judgment [DE 237].

Further, the Court **DENIES as moot** the Motion to Strike Browne's Reply to Waldo's Summary Judgment Response [DE 266] and **DENIES** the Motion to Dispute Jennifer Waldo's Forensic Report [DE 322]

The Court **DIRECTS** the Clerk of Court to **UNSEAL** Plaintiff's Evidence in Support of Motion for Summary Judgment [DE 298].

The Court **ORDERS** Counterclaimant Waldo to **FILE** a status report regarding her counterclaims, which are the only claims that remain pending in this case, **on or before April 14, 2023**.

SO ORDERED on March 27, 2023.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT